**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:19-cv-20859-MORENO/LOUIS

ALEXANDER GUTIERREZ,

      Plaintiff,

vs.

ANDREW SAUL, Commissioner
of Social Security Administration,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS**

**THIS MATTER** is before the Court on Plaintiff Alexander Gutierrez's Motion for Summary Judgment (ECF No. 17) and Defendant Andrew Saul's, Commissioner of the Social Security Administration, Motion for Summary Judgment (ECF No. 21). The Honorable Federico A. Moreno, United States District Judge, has referred the cross motions to the undersigned for a Report and Recommendation (ECF No. 2). The undersigned has fully considered the motions and the record and is otherwise duly advised in the matter.

Because the undersigned concludes that the Administrative Law Judge's ("ALJ") credibility determinations as to Plaintiff's treating physician is not supported by substantial evidence, and the ALJ's Residual Functional Capacity assessment is not supported by the substantial evidence of the record because it fails to properly assess Plaintiff's symptoms and limitations the undersigned respectfully recommends that Plaintiff's Motion be **GRANTED in part** and Defendant's Motion be **DENIED**, and that the ALJ's decision be **REVERSED** and

**REMANDED** with instructions to accord proper weight to Dr. Canosa's opinions, and to reassess steps three through five of the Social Security Administration sequential evaluation process, as further explained below.

## I.     PROCEDURAL BACKGROUND

This case involves an application for social security disability benefits under the Social Security Act ("Act"), 42 U.S.C. §401 *et seq.* On May 17, 2016, Plaintiff applied for social security disability insurance benefits and supplemental security income under Title II and XVI of the Act alleging an ongoing disability that began on October 15, 2015 (R. 203-209; R. 210-216). Plaintiff's applications were initially denied on June 15, 2016 and denied again upon reconsideration on July 27, 2016 (R. 103-12; R. 116-29). Following the denial of both claims, Plaintiff requested a hearing before the ALJ, which was held on May 7, 2018 before Administrative Law Judge ("ALJ") James C. Cartledge (R. 33-54). At the hearing, Plaintiff was represented by counsel, and both Plaintiff and Vocational Expert, Loren Lovely, testified.

On May 24, 2018, the ALJ issued a decision denying Plaintiff's application for disability insurance benefits and supplemental income because Plaintiff was not disabled within the meaning of the Act (R. 20). Plaintiff requested a review of the ALJ's decision. The Appeals Council denied the Plaintiff's request on February 19, 2019 (R. 1-8). Plaintiff now seeks judicial review of the ALJ's decision, and both parties moved for summary judgment.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to whether "it is supported by substantial evidence and based on the proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person

would accept as adequate to support a conclusion." *Id.* (quoting *Lewis*, 125 F.3d at 1439) (internal quotation marks omitted); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a mere scintilla, but less than preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1250 n.8 (11th Cir. 2004)). Even if the evidence preponderates against the ALJ's decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)).

A claimant must be "disabled" to be eligible for social security benefits. 42 U.S.C. § 1382. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

A claimant bears the burden of proving that she is disabled. *Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a). The Social Security regulations outline a five-step, sequential evaluation process used to decide whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At the first two steps, the claimant must show that she is not currently engaged in substantial gainful activity and that she has a severe impairment. *See id.* §§ 404.1520(a)(4)(i) and (ii), 416.920(a)(4)(i) and (ii). Neither point is contested here: it is undisputed that Plaintiff is not engaging in substantial gainful activity and the

ALJ determined that Plaintiff has a combination of impairments that are "severe." Third, the claimant has an opportunity to show that the impairment meets or equals the criteria in one of the Listings of Impairments ("the Listings"). *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a Listing and meets the duration requirement (20 C.F.R. § 404.1509), the claimant is disabled. *Id.* If it does not, the ALJ proceeds to the fourth step. At the fourth step, the ALJ considers the claimant's residual function capacity and the claimant's relevant past work to determine if she has an impairment that prevents her from performing her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant cannot perform her past work, the burden shifts to the Commissioner to show that there are jobs that the claimant can perform. *See Jones*, 190 F.3d at 1228; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.     THE RECORD

### A.  Hearing Testimony

#### i.      Plaintiff's Testimony

Plaintiff was 43 years old at the time of the hearing and lived in a house with his mother (R. 39, 45). Plaintiff testified that he could drive a car and had been employed making dental prosthesis and dentures at a dental laboratory in 2005 and again from 2012 to 2015 (R. 39). He testified that he worked at several laboratories but decided to leave because he was feeling bad and "very sad" (R. 40). He testified that after leaving the job in 2005, he spent time not feeling well and decided that he had to stop working because he "just couldn't do it" (R. 40).

Plaintiff also testified that he returned to work from 2012 to 2015 to engage in the same line of work – making dental prosthesis and repairs – but stopped working because he felt very bad and did not have the desire to go to work (R. 41). Plaintiff testified that although he had the

job for three years, he felt bad for a long time and he found it hard to get out of bed because he lacked the will power to do so (R. 41). Plaintiff also testified that he lacks the willpower and energy to do tasks on a daily basis, that he frequently feels sad, frequently has poor motivation, frequently has difficulty concentrating and making decisions, frequently suffers from insomnia, and frequently suffers from anxiety (R. 43-44).

Plaintiff testified that before he lost his medical insurance, he went to the psychologist once a month, but when he worked, he went every 15 days (R. 51). The ALJ asked Plaintiff if he felt his medications worked, and Plaintiff responded that he sometimes felt that they worked but at other times he felt that the medication did not. (R. 51).

### ii.    Vocational Expert Testimony

Loren Lovely, a Vocational Expert, also testified at the hearing. (R. 41-42). The Vocational Expert testified that Plaintiff's previous job title was dental technician, which has an exertional level of light and a specific vocational profile ("SVP") of 7. (R. 42). On the first hypothetical, the ALJ asked the Vocational Expert if an individual with the same age, education, work experience as the Plaintiff, that is limited to a SVP of 1 and 2 occupations of "simple, routine, repetitive tasks, requiring occasional interaction with the public, coworkers, and supervisors and limited to occasional work setting changes" could perform past relevant work of the Plaintiff. (R. 46). The Vocational Expert testified that although the hypothetical individual could not perform past relevant work, the individual could perform other jobs such as a linen room attendant, which has an exertional level of medium and SVP of 2 (R. 47). The Vocational Expert also testified that the individual could also be a laundry laborer with an exertional level of medium and an SVP of 2 or an industrial cleaner with an exertional level of medium and SVP of 2 (R. 47).

Additionally, the ALJ posed a second hypothetical and asked the Vocational Expert if there

were any available jobs for an individual with the same traits as those in the first hypothetical but with psychological issues so severe that the hypothetical individual would miss at least two days a month outside of sick days and vacation time. (R. 47). The Vocational Expert testified that "this is above and beyond what people in the general economy would tolerate." (R. 47).

Plaintiff's counsel also examined the Vocational Expert. Plaintiff's counsel asked if a hypothetical claimant with the same background as Plaintiff, but with a limitation that he is only able to function 80% of the time, could engage in any type of work (R. 48-49). The Vocational Expert responded that the hypothetical claimant could not engage in any type of work (R. 49).

**B.  Plaintiff's Self-Assessments**

Plaintiff completed function reports as part of his social security disability claim. In filling out the questionnaire, Plaintiff reported that he felt very depressed when he worked. He also stated that he spends much time in bed, and that he has to take medication to be able to sleep (R. 247-48). In describing how his conditions affect his personal care routine, Plaintiff stated that he almost always uses the same clothes every day, that he has little desire to bathe, does not care about his hair, infrequently shaves, has no appetite and spends hours without eating, and frequently uses the toilet (R. 248). Plaintiff noted that he needs reminders to care for himself and his mother encourages him to change clothes and bathe, and also reminds him to take his medications (R. 249).

Also, regarding Plaintiff's ability to prepare meals, he noted that he only prepares sandwiches on a weekly basis, and generally takes his time (R. 249). Plaintiff also stated that he does perform household chores like cleaning but is slow at it and only does it when he has the desire to or is encouraged to do so (R. 249). Plaintiff also noted that he drives, and shops either in store or online if he needs something (R. 250). Plaintiff is also able to pay bills, count change,

handle a savings account and use checkbooks/money orders (R. 250).

Regarding the effect of Plaintiff's condition on his ability to perform tasks, Plaintiff answered that his condition affected his memory, his ability to complete tasks, to concentrate, understand, follow instructions, and get along with others (R. 252). Plaintiff attributes these effects to his inability to understand written instructions and to follow spoken instructions (R. 252). Plaintiff also stated that in regard to work, he gets angry quickly and has difficulty in understanding business owners and does not adapt well to change (R. 258).

Plaintiff also answered an anxiety questionnaire and reported that he has anxiety attacks about three days per week, which are caused by the slightest concern or problem (R. 258-59). He also reported that his frequent anxiety attacks are worsened when he is angry but that his medications help relieve his symptoms (R. 259). However, Plaintiff reported that he felt that his anxiety attacks produced insecurity and indecision (R. 260).

### C. Summary of Relevant Medical Evidence

#### i. Healing Touch C&C

The Plaintiff was under the psychiatric care of the Healing Touch C&C, and was primarily seen by psychiatrist Dr. Oscar Canosa, M.D. from August 2015 through February 2018. At the initial consultation on August 22, 2015, Plaintiff complained that he felt very anxious, that he always had anxiety since he was a child but that it had recently worsened, that he was having aggressive behavior, and that he had mood shifts with hypomanic thoughts (R. 339). At this time, Dr. Canosa noted that Plaintiff's condition was moderate, and was positive for the following symptoms: decreased energy, sadness, fair motivation, anxiety, excessive worries, and manic thinking (R.339-40). Dr. Canosa also noted that Plaintiff's thought content and thought form were logical, his attention/concentration were normal, but his mood was depressed and anxious, and his

insight impaired (R. 340). At the end of the initial consultation, Dr. Canosa diagnosed Plaintiff with anxiety and prescribed Chlordiazepoxide and Quetiapine (R. 340).

In the next visit on October 17, 2015, Plaintiff was seen by nurse practitioner, Yanet Alvarez (R. 337). Plaintiff complained that he felt very anxious, unsatisfied with his job as a dental technician, and felt claustrophobic as he could not step inside elevators or be in enclosed spaces (R. 337). At this visit, Plaintiff was positive for the following symptoms: anxiety, irritability or angry outbursts, mood shifts with hypomanic thoughts and sadness (R. 337). The nurse practitioner also noted that Plaintiff's thought content and thought form were logical, his thought process was abstract, mood was anxious and depressed, his affect expressive, his attention/concentration were normal, and sleep, motivation/energy were fair (R. 338). Plaintiff was diagnosed with anxiety with no changes since the previous consultation (R. 338).

On October 31, 2015, Plaintiff was seen by Karina Cata A.R.N.P., and complained that although he felt better, he still felt anxious and claustrophobic (R. 335). It was noted that Plaintiff was positive for anxiety, irritability or angry outbursts, and his content and form were logical, thought process was concrete, his attention/concentration was normal, his motivation/energy was good, his mood was anxious, and affect was expressive (R. 335-36). Plaintiff was once again diagnosed with anxiety with no significant changes since his last consultation (R. 336).

On November 18, 2015, Plaintiff described feeling better since quitting his job (R. 333). Nurse Yanet reported that Plaintiff's condition was mild and controlled with the prescribed medications, but he still suffered from anxiety (R. 333). On the following consultation, Plaintiff was again seen by Nurse Cata and reported feeling better but still anxious, and he also reported having frequent nightmares about his past job (R. 331). At this consultation, Plaintiff's condition was moderate, his thought content and form were logical, thought process was concrete, his mood

was anxious, affect was stable and appropriate, his attention/concentration were normal, his sleep was fair, and his motivation/energy were good (R. 332). Plaintiff was subsequently diagnosed with anxiety disorder (R. 332).

Moreover, on February 27, 2016, Plaintiff complained that he felt anxious, that it took him over an hour to fall asleep, that he woke up several times in the night and had difficulty returning to sleep, that he slept less than four hours and consequently felt tired during the day, and that his lack of sleep interfered with his social, occupational and family life (R. 329). Nurse Cata noted that Plaintiff was positive for anxiety, difficulty concentrating or thinking, and insomnia (R. 329). At this meeting, Plaintiff's thought content and form were within normal limits, his mood was anxious, anxiety was high, affect was restricted, memory impaired, attention/concentration was normal, his coping skills were fair, and his motivation/energy were poor (R. 330). Consequently, Plaintiff was diagnosed with anxiety disorder and insomnia (R. 330).

On May 14, 2016, Plaintiff was seen by Dr. Canosa and complained of a myriad of issues including: feeling depressed, anxious and sad for most of the day, feeling irritable, having low interest in activities, losing his temper easily, feeling worthless, having trouble concentrating, feeling distracted and forgetful, and difficulty sleeping (R. 324). Plaintiff also reported feeling that these symptoms interfere with his ability to maintain social interactions and familial relations (R. 324). In this consultation, Dr. Canosa documented that Plaintiff's condition was moderate, and was positive for the following symptoms: difficulty concentrating or thinking, indecisiveness, manic thinking, decreased energy, poor motivation, sadness, irritability and insomnia (R. 324). Dr. Canosa also noted that Plaintiff's thought content and form were logical, his mood depressed and anxious, affect was labile, attention/concentration was distracted, and motivation/energy was poor (R. 325). Consequently, Dr. Canosa diagnosed Plaintiff with Bipolar I disorder, anxiety disorder,

major depressive disorder moderate, and insomnia (R. 325).

On June 11, 2016, Plaintiff reported feeling better since his last consultation, but also reported that he felt anxious, irritable, his mood was constantly fluctuating, and he was constantly worrying (R. 321). Plaintiff's condition was moderate, and he was positive for anxiety, excessive worries, difficulty concentrating or thinking, indecisiveness manic thinking, decreased energy, sadness, poor motivation, and irritability (R. 321). Although his thought process, memory, and appearance were logical and appropriate, Nurse Cata noted that Plaintiff still suffered from the stated conditions above (R. 322).

In August 2016, Plaintiff complained that he still felt anxious and irritable, was now arguing with his family members and co-workers, and felt too tired and unmotivated to do his chores (R. 418). In this consultation, Plaintiff's condition was moderate, and his thought content and form were logical, his thought process was concrete, his mood was anxious, depressed and irritable, and his attention/concentration was distracted (R. 419). Plaintiff was once again diagnosed with Bipolar I disorder, anxiety disorder and insomnia (R. 419). Again, in his September 2016 visit, Nurse Cata reported that Plaintiff's status was the same since the last visit in August (R. 415-16).

In his October 2016 consultation, Plaintiff reported feeling less anxious but was still worried about his everyday problems and his disability process (R. 412). His condition at this point was still moderate and his attention/concentration was distracted, thought content and form were logical, affect was restricted, and his mood was anxious and depressed (R. 412-13). Similarly, in his November 2016 consultation, Plaintiff reported that he felt better but was still distracted with memory problems, and still worried about his disability process (R. 409). Plaintiff was once again diagnosed with Bipolar I disorder, anxiety, and insomnia but showed some improvement (R. 410).

On December 13, 2016, Plaintiff was seen by Nurse Eduardo Navarro, who created a master treatment plan to help Plaintiff. At this consultation, Nurse Navarro noted that Plaintiff's mood was anxious, his affect restricted, coping skills fair, motivation/energy were poor, and his sleep was poor (R. 400). Plaintiff was given a 54 GAF score and diagnosed again with bipolar I disorder, anxiety disorder, and insomnia (R. 400). Moreover, in his January 26, 2017 consultation, Plaintiff reported that he had difficulty sleeping, had frequent nightmares, and was distracted and forgetful (R. 393). Nurse Cata noted that Plaintiff's thought content and form were logical, his thought process concrete, his mood anxious and depressed, his attention/concentration distracted and his motivation/energy fair (R. 394). It was also noted that while Plaintiff's diagnosis was the same as the previous visits, his insomnia worsened since the previous visit (R. 394).

Furthermore, in Plaintiff's February 2017 consultation, the treatment notes reflect that Plaintiff's condition was still moderate, and his condition persisted with no significant changes since the previous visit (R. 390-91). Also, in Plaintiff's April 2017 consultation, the treatment notes reflect that Plaintiff was positive for the following symptoms: sadness, decreased energy, low self-esteem, difficulty concentrating, indecisiveness, anxiety, and mood shifts (R. 384). It was also noted that Plaintiff's thought process was abstract, his mood was anxious and depressed, attention/concentration was distracted, and his motivation/energy were poor among other findings (R. 385). Hence, at this point, the notes reflect that Plaintiff's condition was moderate and there were no changes since his last visit (R. 385). These observations are also noted in the subsequent consultations on May through August 2017 since Plaintiff's condition remained moderate, and his thought process was still abstract, and at times his affect was also labile (R. 370-83).

In Plaintiff's final documented consultation on February 22, 2018, Plaintiff reported that he felt anxious, worried excessively about his problems, that he had trouble focusing on a single

task, that he had a lack of motivation and energy to do his chores approximately four times a week (R. 356). Based on these observations, the treatment notes reflect that Plaintiff's condition as still moderate, and he was positive for decreased energy, anxiety, excessive worries, mood shifts, sadness, and difficulty concentrating (R. 356). Further, the notes also reflect that Plaintiff's thought form was logical, thought process was abstract his mood was anxious and depressed as in previous visits, his affect labile, and his attention/concentration distracted (R. 357). In this last consultation, Dr. Canosa noted that Plaintiff still suffered from bipolar I disorder, anxiety disorder and insomnia that worsened since the last visit (R. 357).

### ii.     State Agency Psychological Consultants

The record also contains two medical assessments completed by two State Agency review physicians, Judith E. Myers, Psy. D., and Robert Hodes, Ph.D. (R. 55-74; R. 79-98). None of the two State Agency review physicians met or examined Plaintiff in person.

In her initial medical assessment, Dr. Myer's opined that Plaintiff was not significantly limited in his ability to remember work-like procedures, and to understand and remember simple instructions, but was moderately limited in his ability to understand and remember detailed instructions (R. 60). Dr. Myer also opined that Plaintiff was not significantly limited in his ability to perform activities, maintain regular attendance, to sustain an ordinary routine without special supervision, to work with others, to make simple work-related decisions, and to complete a workday and workweek without interruptions from his symptoms (R. 61). But Dr. Myer's found that Plaintiff was moderately limited in his ability to interact with the public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers without distracting them or exhibiting behavioral extremes (R. 61). Based on these findings, Dr. Myer concluded that Plaintiff retained the "ability to perform simple, repetitive tasks, with limited social

contact," and was not disabled (R. 61-63).

Dr. Hodes provided a medical assessment that was in accord with the initial medical assessment by Dr. Myer's that concluded that the Plaintiff was not disabled (R. 79-88). Specifically, Dr. Hodes opined that although Plaintiff had understanding and memory limitations, his abilities to remember locations, work-like procedures, to understand and remember simple instructions were not significantly limited but his ability to understand detailed instructions was moderately limited (R. 85). Dr. Hodes also opined that Plaintiff did have concentration and persistence limitations but that his abilities to carry out simple instructions, to perform activities, sustain an ordinary routine, work in coordination with others, make simple work-related decisions, and to complete a normal workday or workweek were not significantly limited (R. 85). When assessing Plaintiff's social interaction limitations, Dr. Hodes opined that Plaintiff was moderately limited in his abilities to interact with the public, accept instructions and criticism from supervisors, and to get along with coworkers or peers (R. 86). Based on these opinions, Dr. Hodes concluded that Plaintiff retained the ability to perform simple, repetitive tasks with limited social contact, and that he was able to "meet the basic demands of work on a sustained basis, despite any limitations" (R. 86). As a result, Dr. Hodes found that Plaintiff was not disabled and was able to engage in occupations like a warehouse worker, cleaner or gate guard, that exist in the national economy (R. 87).

### D. The ALJ's Decision

After reviewing the evidence and conducting the five-step inquiry, the ALJ determined that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of October 15, 2015 and denied his application for benefits (R. 20). At step one, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since October 15, 2015 (R. 22). At step

two, the ALJ determined that Plaintiff had affective disorder, anxiety disorder, and bipolar disorder, all of which were severe impairments that significantly limit the Plaintiff's ability to perform basic work activities (R. 22). At step three, the ALJ found that Plaintiff's impairments did not meet one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 22). In particular, the ALJ found that Plaintiff's impairments did not meet or equal the criteria of listings 12.04 and 12.06, nor did Plaintiff's impairment result in at least two marked limitations or one extreme limitation listed in paragraph B or satisfy paragraph C criteria. (R. 22-24). At step four, the ALJ determined that Plaintiff had a residual functional capacity to perform medium work, and that Plaintiff retained the mental ability to perform simple, routine, and repetitive tasks. (R. 24).

After reviewing the evidence and Plaintiff's testimony, the ALJ found that although the Plaintiff's impairments could reasonably be expected to cause his symptoms, Plaintiff's statements regarding the intensity and limiting effects of his symptoms were not consistent with the evidence of the record (R. 25). In making this determination, the ALJ considered Plaintiff's testimony and statements made in his evaluation form regarding his capability to engage in daily activities such as driving a car, preparing meals, engaging in household chores, shopping, paying bills, and talking with friends on a weekly basis (R. 25). The ALJ also considered the opinion evidence and afforded Plaintiff's treating physician's opinion partial weight after determining that his medical opinions were inconsistent with the treatment notes, which showed that the Plaintiff's attention, concentration, and memory were normal at times (R. 26). The ALJ accorded great weight to the medical opinions of State Agency reviewing physicians.

The ALJ further determined that the Plaintiff was unable to perform past relevant work as a dental technician based on testimony from the Vocational Expert (R. 26). Subsequently, the ALJ moved to step five of the inquiry and determined that there were jobs in the national economy that

the Plaintiff could perform (R. 27). Specifically, the ALJ concluded that Plaintiff could perform the jobs of linen room attendant, laundry laborer, and industrial cleaner (R. 27). The ALJ concluded that the Plaintiff was not disabled within the meaning of the Act from the alleged onset date through the date of the decision (R. 28).

## IV.   DISCUSSION

On appeal, Plaintiff argues that the ALJ committed reversible error when he denied Plaintiff's application for benefits. First, Plaintiff argues that the ALJ failed to articulate the requisite good cause for according partial weight to the medical opinions of Plaintiff's treating psychiatrist. Second, Plaintiff contends that the ALJ's Residual Functional Capacity ("RFC") finding is not supported by the substantial evidence on the record. Third, Plaintiff argues that the ALJ failed to properly assess his alleged symptoms.

Defendant avers that substantial evidence supports the ALJ's denial of social security benefits. Particularly, Defendant argues that substantial evidence supports the ALJ's RFC finding. Defendant also argues that the ALJ gave proper weight to the Plaintiff's treating psychiatrist's opinion, and that substantial evidence supports the ALJ's determination that the Plaintiff's statements regarding his symptoms were inconsistent with the medical evidence on the record.

Upon review of the record, the undersigned finds that the ALJ's decision to give Dr. Canosa's medical opinions partial weight and to give great weight to the opinions of the State Agency physicians was not supported by substantial evidence. Additionally, the undersigned finds that the ALJ's RFC is not supported by the substantial evidence in the record because it fails to properly assess Plaintiff's alleged symptoms and limitations. Consequently, the undersigned recommends that the ALJ's decision be reversed and the case remanded with instructions to the Commissioner to accord proper weight to the medical evidence and to reassess steps three through

five of the Social Security Administration sequential process.

**A.  The ALJ Erred in According Partial Weight to Dr. Canosa's Medical Opinions**

In seeking reversal of the ALJ's decision, Plaintiff argues that the ALJ failed to accord proper weight to Plaintiff's treating physician, Dr. Canosa. Specifically, Plaintiff avers that good cause did not exist to give Dr. Canosa's findings "partial weight" (R. 26). Additionally, Plaintiff avers that the ALJ erred in according "great weight" to the State agency reviewing psychologists' opinions in light of him only according "partial weight" to that of Plaintiff's treating physician.

This Court's review of the Commissioner's decision is limited to determining if it is supported by substantial evidence and based upon proper legal standards. *Lewis*, 125 F.3d at 1439. It is well established that the "testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Id.* at 1440. "Good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotations omitted).

The reports of treating physicians are considered particularly valuable when treatment has extended over a considerable period of time. *Chester v. Bowen*, 792 F.2d 129, 130 (11th Cir. 1986). By contrast, "the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians are entitled to little weight." *Ortega v. Chater*, 933 F. Supp. 1071, 1074 (S.D. Fla. 1996); *accord Hillsman v. Bowen*, 804 F.2d 1179, 1182 (11th Cir. 1986) ("this court has previously cautioned against rejecting the opinions of treating physicians in favor of the contrary conclusions of consultants who have merely examined an applicant's medical records.").

Here, although the ALJ acknowledged that Dr. Canosa had been Plaintiff's primary treating

psychiatrist for several years, he determined that his opinion should be afforded "partial weight" because his opinion regarding poor limitations was inconsistent with his contemporaneous treatment notes, which showed Plaintiff's attention, concentration, and memory were normal at times (R. 26). The ALJ also acknowledged that Dr. Canosa completed two Medical Assessments of Ability to Do Work-Related Activities (Mental), which stated on August 20, 2016 that Plaintiff had poor to good ability to make occupational adjustments and poor to fair ability to make performance adjustments and personal/social adjustments (R. 345-46), and on March 3, 2018 that Plaintiff had no ability to fair ability to make occupational adjustments, poor ability to make performance adjustments, and poor to good ability to make personal/social adjustments (R. 422-23). However, the ALJ attempted to dismiss these findings because Dr. Canosa's contemporaneous treatment notes showed Plaintiff's attention, concentration, and memory were normal at times. At the same time, he afforded "great" weight to the opinions of reviewing physicians, Drs. Myers and Hodes (R. 26).

###### i.   Good Cause Does Not Support the ALJ's Finding

The undersigned turns to the three factors outlined in *Phillips v. Barnhart* to determine whether the rationale advanced by the ALJ constitutes "good cause" for giving little weight to Dr. Canosa's findings. *Phillips*, 357 F.3d at 1240. The undersigned notes that the ALJ only based his discrediting of Dr. Canosa's opinions on the third factor, whether the treating physician's opinions were conclusory or inconsistent with the doctor's own medical record and does not address any of the other two factors. Regardless, the undersigned considers all three factors to determine if substantial evidence of the record supports the ALJ's finding.

###### a.   The Treating Physician's Opinion Was Bolstered by the Evidence

The undersigned first looks to whether the treating physician's opinion was not bolstered

by the evidence. The ALJ stated the Dr. Canosa's opinions are "inconsistent with the contemporaneous treatment notes" (R. 26). However, this is not accurate. Dr. Canosa's notes contain multiple ways in which he analyzed and characterized Plaintiff's mental condition. While his reports may not indicate any specific laboratory or clinical tests, Dr. Canosa set forth medical signs and symptoms sufficient to justify his diagnoses and treatment of Plaintiff. Included among the signs and symptoms suffered by Plaintiff are: anxiety (R.339), daytime somnolence (R. 329), decreased energy (R. 339), depression (R. 324), difficulties concentrating or thinking (R. 393), distractedness (R. 409), excessive worries (R. 360), feeling down (R. 372), fluctuating mood (R. 393), forgetfulness (R. 324), guilt (R. 324), heart palpitations (R. 318), hopelessness (R. 324), lack of motivation (R. 406), low interest, enjoyment of activities (R. 324), low self-esteem (R. 396), manic thinking (R. 324), poor motivation (R. 418), worthlessness (R. 324), and sadness (368) among others. Dr. Canosa used these signs and symptoms to diagnose Plaintiff with Major Depressive disorder, Anxiety, and Bipolar I disorder.

Certain medical symptoms, when analyzed by a physician or psychologist, can point out identifiable elements of a specific impairment. Indeed, as with many psychiatric and psychological impairments, often medical signs and symptoms are the only means available to prove the existence and severity of these impairments. *Ortega*, 933 F. Supp. at 1075.

The Social Security Regulations definition of "objective medical evidence" includes medical "signs," which in the context of a psychiatric observation means "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g. abnormalities of behavior, mood, thought, memory, orientation, development, or perception," that can be shown by observable facts that can be medically described and evaluated. 20 C.F.R. § 404.1502. In the present case, Dr. Canosa noted in the 2016 medical assessment that Plaintiff "presents with bipolar

type I disorder and anxiety. His mood is unstable, switching from mania to depression. Because of this, he is not able to deal with everyday stress and work related duties. His ability to properly follow and carry out instructions is hampered." (R. 345). Additionally, he also noted that Plaintiff "is not able to follow through with complex or simple job instructions. Due to his condition, his anxiety levels are elevated. He often presents with flight of ideas which interrupt concentration." (R. 346). Notably, Dr. Canosa opined that Plaintiff's "emotional state varies, which impacts his behavior when confronting a situation because of this. Also he is not a reliable option in regards to work" (R. 346).

In the 2018 medical assessment, Dr. Canosa noted that Plaintiff had "no useful ability" to deal with work stress (R. 422). Specifically, he wrote that Plaintiff "presents unpredictable mood shifts that can affect work relationships and ability to handle work situations effectively." (R. 422).

While the ALJ found that Dr. Canosa's assessments were inconsistent with his contemporaneous treatment notes, Dr. Canosa noted signs of Plaintiff's pronounced psychological impairments with minimal improvement in Plaintiff's overall condition. The vast majority of Dr. Canosa's records document abnormalities in Plaintiff's behavior, mood, thought, and perception over a three-year period. The ALJ failed to acknowledge the abundant documentation of Plaintiff's depression and bipolar disorder symptoms as being "objective" evidence to support Dr. Canosa's opinion, and thus, failed to give his opinions the appropriate weight. The undersigned finds that the physician's opinion was bolstered by the evidence, which weighs in favor of remanding.

### b.  Evidence Does Not Support a Contrary Finding

The second factor for the Court to consider is whether the treating physician's opinions were contradicted by the evidence in the record. The ALJ does not explicitly state that he discredits Dr. Canosa because of other inconsistent evidence in the record (other than his treatment notes as

explained below), rather instead of relying on Dr. Canosa's opinions, the ALJ relies heavily on the State agency consulting physicians, affording their opinions "great weight." The Court finds it was error to give "great weight" to the consulting physicians in light of giving "marginal weight" to that of the treating physician. *See Ortega*, 933 F. Supp. at 1074.

Here, the state agency consultative physicians did nothing more than review some of the medical records of Dr. Canosa. As Plaintiff notes, at the time of the State agency psychologists' review, the two psychologists would have only had a third of the 33 visits on record and would not have had the opportunity to consider Dr. Canosa's opinions as documented in the 2016 and 2018 Mental Medical Assessments of Ability to do Work-Related Activities. However, while the State agency physicians found that Plaintiff retained the ability to perform simple, repetitive tasks with limited social contact and meet the basic demands of work on a sustained basis (R. 26). Dr. Canosa's came to the opposite conclusion, finding that Plaintiff had "no useful ability" to deal with work stress, "[t]hus impacting regular attendance or ability to follow a work schedule. [Plaintiff] will not be able to behave in emotionally [*sic*] stable manner, especially under stressful situations." *Ortega*, 933 F. Supp. at 1074 (the opinions of reviewing, non-examining physicians, when contrary to those of examining physicians, are entitled to little weight). Although the ALJ does not state specifically that he relies on Drs. Myers and Dr. Hodes opinions instead of Dr. Canosa's, his decision implicitly does so as he accords weight to the State agency physicians and discounts the opinion of Plaintiff's only treating physician. Thus, the ALJ's decision to give great weight to the opinions of contrary, non-examining physicians, in light of the fact that they relied on an incomplete record and their opinions contradict that of Dr. Canosa, the treating physician, was error and this factor weighs in favor of remand.

### c. Dr. Canosa's Opinions Were Consistent with His Medical Notes

The third factor is whether the doctor's opinion was conclusory or inconsistent with the doctor's own medical record. Here, the ALJ does not indicate that he discredits Dr. Canosa because his opinions are conclusory, rather the ALJ finds that Dr. Canosa's opinions are inconsistent with his own contemporaneous treatment notes. This is the factor on which the ALJ bases his discrediting of Dr. Canosa's opinions. Plaintiff cites to a recent Eleventh Circuit decision which this Court finds virtually indistinguishable, *Castro v. Acting Comm'r of Soc. Sec.*, 783 Fed. App'x. 948 (11th Cir. 2019). Notably, Defendant does not attempt to distinguish or discuss *Castro* in its responding brief.

In *Castro*, the court held that substantial evidence did not support the ALJ's conclusion that the treating physician's opinions were inconsistent with treatment notes stating that the patient had good judgment, insight, thought process, and thought content. The court concluded that "no reasonable person would accept the conclusion that the observations in the treatment notes contradicted [the treating physician]'s opinions" because the "treatment notes reflected his observations of [the patient] during treatment appointments in a medical environment," *id*. at 956.

Likewise, Plaintiff exhibiting attention, concentration, and memory that at times were normal in a clinical setting, does not contradict Dr. Canosa's opinion that in a work setting, Plaintiff would be unable deal with work stressors, follow through with simple or complex work instructions, or properly follow through with and carry out work instructions. The undersigned finds that substantial evidence does not support the ALJ's decision to accord "partial" weight to Dr. Canosa's findings because as Dr. Canosa explains in his findings: Plaintiff's emotional states vary (R. 346) and his mood is unstable and fluctuates between mania and depression (R. 346).

In fact, this is consistent with Dr. Canosa's opinions: while Plaintiff's attention,

concentration, and memory were normal at times, there were oftentimes where he exhibited the exact opposite of these symptoms. For example, while in some of Dr. Canosa's notes Plaintiff appeared to have normal concentration and attention, in 18 of the contemporaneous notes it is noted that Plaintiff's attention and concentration were "distracted" (R. 313, 319, 322, 325, 328, 357, 379, 382, 385, 388, 391, 394, 397, 407, 410, 413, 416, 419). This is consistent with Dr. Canosa's findings that Plaintiff's mood varies greatly, changing from manic to depression. Dr. Canosa's treatment notes regarding the great variance in Plaintiff's symptoms is consistent with his opinion that Plaintiff's varying symptoms would prohibit him from adapting to the stressors of the work environment and his ability to make and maintain relationships with his coworkers, supervisors, and the public.

Because I find that good cause does not exist to discount Dr. Canosa's opinions, I recommend that Plaintiff's Motion for Summary Judgment be **GRANTED in part**, and Defendant's Motion for Summary Judgment be **DENIED**.

## B. The ALJ's RFC Finding Is Not Supported by Substantial Evidence of the Record Because the ALJ Failed to Properly Assess Plaintiff's Alleged Symptoms and Limitations

Plaintiff's second and third arguments aver that the ALJ's findings were not supported by substantial evidence of the record. Plaintiff avers that the ALJ's discounting of his symptoms resulted in an RFC which was not supported by substantial evidence of the record. Likewise, Plaintiff avers that the ALJ failed to properly asses his alleged symptoms and limitations pertaining to the intensity, persistence, and limiting effects of his mental health symptoms. The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record.

When a plaintiff attempts to prove disability based on his subjective complaints, he must

provide evidence of an underlying medical condition and either 1) objective medical evidence confirming the severity of his alleged symptoms, or 2) evidence establishing that his medical condition could reasonably be expected to give rise to the alleged symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes that he has an impairment that could reasonably expected to produce his symptoms, the ALJ must evaluate the intensity and persistence of the plaintiff's alleged symptoms and their effect on the plaintiff's ability to work. *Id*.

Defendant makes two arguments in response: First Defendant avers that while Plaintiff relies on the number of times he reported symptoms to his doctor, the objective medical findings and other evidence in the medical records do not indicate that Plaintiff's condition was as limiting as he claimed. Second, Defendant avers that the substantial evidence of the record demonstrates that Plaintiff was not as limited as he claimed based on evidence of his activities of daily living.

As to the first argument, Defendant states that the ALJ relied on Plaintiff's treating physicians' treatment notes that showed Plaintiff was feeling "fine" or "better" and states that Plaintiff's treatment controlled his alleged symptoms which undermines his allegations of disabling limitations. However, Defendant's argument must be rejected in light of binding Eleventh Circuit precedent. *See Sharfaz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

In *Sharfarz*, a treating physician opined that a patient was totally incapable of employment because he suffered from osteoarthritis with pain and limited motion. *Id*. The ALJ gave his opinion little weight, finding that it was inconsistent with a treatment note from the same physician stating that the patient was "significantly better." *Id*. The Eleventh Circuit held that this note did not provide a "sound basis" for the ALJ to reject the physician's opinion that the patient was unable

to work. *Id*. The Eleventh Circuit explained that the statement about the patient's improvement needed to be viewed in context of the entire record, which included a treatment note from the previous appointment stating that the patient had complained of exacerbating pain and was unable to walk unless assisted by another person. *Id*. Given the context of the note, the Eleventh Circuit held that there was no contradiction between a treatment note stating that the patient was doing "significantly better" and the physician's ultimate opinion that the patient was unable to work. *Id*.

Although *Sharfarz* involved a provider's assessment of a patient's physical condition, the Eleventh Circuit found in *Castro* that the analysis applied with "equal force when a provider opines about a patient's limitations due to a mental health condition." *Castro*, 783 Fed. App'x. at 957. As the court stated in *Castro*, "when the medical evidence shows that a patient's condition fluctuated, any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Id*. (quoting *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal marks omitted).

Here, the undersigned cannot say that the substantial evidence supports the ALJ's conclusion that the treatment notes stating Plaintiff had improved contradicted Dr. Canosa's opinion that he continued to experience limitations. For example, at one appointment in January 2017, Plaintiff reported depression symptoms and worsening insomnia with frequent nightmares (R. 394), at the next meeting in February 2017 Plaintiff reported that he was still anxious and having trouble sleeping (R. 390). The next month, in March 2017, Plaintiff reported that he was sleeping and eating properly (R. 387). Yet, two months later Plaintiff reported that he had difficulty falling asleep two nights per week and was sleeping less than 6 hours per night (R. 381). Given these fluctuations, substantial evidence does not support the ALJ's conclusion that the treating physician's notes stating that Plaintiff had improved were inconsistent with his opinion that he

continued to experience limitations due to his depression and anxiety. *Castro*, 783 Fed. App'x. at 957. Accordingly, the undersigned finds that the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations. The ALJ's RFC finding that does not reflect the extent of Plaintiff's functional limitations.

Second, Plaintiff avers that the ALJ failed to properly assess Plaintiff's alleged symptoms and limitations, which affects the ALJ's RFC finding. Defendant responded averring that the ALJ thoroughly considered all of the relevant evidence concerning Plaintiff's mental impairments stating that the ALJ cited more than a scintilla of evidence in support of his RFC assessment and that substantial evidence supports his findings.

According to SSR 96-8p, an ALJ's RFC must be based on all of the relevant evidence in the case record. In assessing the RFC, the ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Moreover, the ALJ must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. *Id.*

The Defendant cites to five categories of evidence that the ALJ relied on in determining Plaintiff's RFC. However, as Plaintiff points out, while the ALJ's decision resuscitates the evidence on which he relied, it does not explain how any material inconsistencies or ambiguities were resolved against the evidence that seems to contradict his determination.

Defendant cites to *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005), for the proposition that Plaintiff's activities, as discussed by the ALJ, show that he was not as limited as he alleged. In *Dyer*, the Eleventh Circuit found that if a plaintiff testifies to his subjective complaints of disabling pain and other symptoms, the ALJ must clearly "articulate explicit and

adequate reasons" for discrediting the claimant's allegations of completely disabling symptoms. *Id*. at 1210. The court continued, although this circuit does not require an explicit finding as to credibility, the implication must be obvious to the reviewing court. *Id*. The credibility determination does not need to cite particular phrases or formulations, but it cannot merely be a broad rejection which is not enough to enable the district court to conclude that the ALJ considered the medical record as a whole. *Id*.

Here, unlike in *Dyer*, Plaintiff has cited to specific evidence which contradicts the ALJ's RFC determination and explanation of that determination. For example, while the ALJ cites to a third-party function report from Plaintiff's friend, Mercedes Gomez, stating that Plaintiff was able to care for his own personal needs with no reported difficulty, it does not discuss the fact that Ms. Gomez stated that Plaintiff had poor concentration, he needs reminders to take his medication, he prepares his own sandwiches, and that while he is able to drive to a store and purchase necessities, that he does not go anywhere on a regular basis (R. 274, 275, 276, 277).

Further, while the ALJ's opinion states that Plaintiff's description of his activities of daily living were not as limited to the extent one would expect given the complaints of disabling symptoms in limitations because of certain factors reported by Plaintiff, it makes no determination of Plaintiff's own assessment that he wears the same clothing every day, has little desire to bathe, is very careless with his hair, and shaves infrequently (R. 248). Additionally, Plaintiff reported that his mother needs to remind him to take his medications, encourage him to take care of his personal needs and grooming (R. 249). Instead, the ALJ simply cites to a portion of the record evidence while failing to mention that record evidence that supports Plaintiff's claim of his symptoms and limitations. It may very well be that the ALJ discredited these contentions, however, without stating articulately and explicitly why the ALJ discredited this evidence, the undersigned finds that

the RFC was not supported by substantial evidence of the record because the ALJ failed to assess Plaintiff's alleged symptoms and limitations. As such, the undersigned recommends that Plaintiff's Motion for Summary Judgment be **GRANTED in part** and Defendant's Motion for Summary Judgment be **DENIED**.

## V.      CONCLUSION

The undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **GRANTED** in part and Defendant's Motion for Summary Judgment be **DENIED**, and that the ALJ's decision be **REVERSED** and **REMANDED** with instructions to reanalyze steps three through five of the Social Security Administration five-step inquiry, including affording proper weight to the opinions of Plaintiff's treating physician.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the Parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Chambers, in Miami, Florida this 7th day of July.

LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE